UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:18-cv-95

| | |
|---|---|
| **RAYMOND BENITEZ**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**THE CHARLOTTE MECKLENBURG HOSPITAL AUTHORITY**, d/b/a CAROLINAS HEALTHCARE SYSTEM, ATRIUM HEALTH<br><br>Defendant. | **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO SEAL EXHIBITS 1 AND 5 TO ITS ANSWER** |

Defendant, The Charlotte-Mecklenburg Hospital Authority, (the "Hospital Authority") submits this Memorandum in support of its Motion to Seal Exhibits 1 and 5 to its Answer.

## SUMMARY

This is a claim filed by the Plaintiff, individually and on behalf of a putative class, against the Hospital Authority alleging that "steering restrictions" in the Hospital Authority's contracts with commercial insurance companies adversely affect competition for inpatient hospital services in the Charlotte area

The Hospital Authority has attached to its Answer documents on which Plaintiff's allegations necessarily rely. These include (1) Plaintiff's billing records (attached to the Answer as Exhibit 1) and (2) the Network Participation Agreement between the Hospital Authority and

Blue-Cross Blue Shield of North Carolina (the "BCBS-NC Agreement") that was in effect at the time of the events alleged in the Complaint (attached to the Answer as Exhibit 5).[1]

The Hospital Authority asks the Court to seal these two exhibits. While Plaintiff's billing records reveal the co-pays and deductibles he paid for treatment that form the basis of his claim, they also contain medical information that is protected by statute under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The Hospital Authority has designated this document as "confidential." The Plaintiff, after consultation, has agreed with the Hospital Authority's actions in filing this under seal.

The BCBS-NC Agreement contains confidential, commercially sensitive terms regarding the reimbursement rates BCBS-NC has agreed to pay the Hospital Authority for patient services, as well as other non-price provisions, that are the result of extensive negotiations between the parties. The disclosure of these terms—which the parties have agreed to keep confidential—would provide commercial intelligence to BCBS-NC's and the Hospital Authority's competitors and undermine their ability to negotiate similar agreements with other parties in the marketplace. Such information accordingly is deemed "competitive health care information" under North Carolina law thus protected from disclosure. *See* N.C. Gen. Stat. § 131E-97.3. Because the Plaintiff could not be provided a copy of this document before the filing of this Motion, the Plaintiff is unable to take a position on the propriety of placing this document under seal at this time.

For each of these reasons, as well as those discussed below, Exhibits 1 and 5 to the Hospital Authority's Answer should be sealed.

---

[1] The Hospital Authority has submitted these documents under seal along with its Answer pending the Court's decision on this motion.

2

Case 3:18-cv-00095-RJC-DCK   Document 19   Filed 04/30/18   Page 2 of 13

## BACKGROUND

### I. Plaintiff's Lawsuit

Plaintiff filed this action on February 28, 2018, seeking to represent a putative class of all patients residing in the "Charlotte area" who have paid co-pays or deductibles for inpatient healthcare services delivered by the Hospital Authority based on claims for violation of federal antitrust laws. *See* Compl. ¶ 41.

Plaintiff was successfully treated by the Hospital Authority for a seven-night period between July 4, 2016 and July 10, 2016, for which he paid $3,440.36 in the form of a co-pay and deductible. Compl. ¶ 4. In his Complaint, Plaintiff alleges—incorrectly—that "[h]e was insured by Blue Cross Blue Shield of North Carolina." *Id.* Copying allegations from the government's complaint, Plaintiff further asserts that arms-length negotiations between the Hospital Authority and large, profitable insurance companies resulted in the insurance companies being forced to accept unfair and unreasonable contract provisions. *Compl.* ¶¶ 25-30. In particular, the Plaintiff complains these contracts include so-called "anti-steering" provisions that deter insurance companies from unilaterally changing the fundamental economic terms of the contracts of their managed care contracts with the Hospital Authority. *Id.* Based on these allegations, Plaintiff asserts that the alleged "steering restrictions" Hospital Authority's managed care contracts have caused prices for inpatient hospital services in the "Charlotte area" to rise to supracompetitive levels, which has supposedly caused Plaintiff to pay higher co-pays and deductibles as well. The billing records and agreements Plaintiff references in his complaint are contained within Exhibits 1 and 5.

## II. Description of Material Sought to Be Sealed

The Hospital Authority seeks to seal Exhibits 1 and 5 to its Answer. These Exhibits have been provisionally filed under seal pending a decision on this motion.

Exhibit 1 contains Plaintiff's medical billing records for treatment he received from the Hospital Authority in July 2016. These records show not only the co-pays and deductibles that form the basis of Plaintiff's claim, but also the plan under which he received coverage, his diagnosis, treatment he received and other confidential medical information.

Exhibit 5 is the Network Participation Agreement between the Hospital Authority and BCBS-NC, with an effective date of January 1, 2014 (again, the "BCBS-NC Agreement"). This agreement reflects the terms BCBS-NC and the Hospital Authority have negotiated for the Hospital Authority's participation in BCBS-NC's PPO network, including rates of reimbursement, pricing, and other non-price terms. The Court has previously ordered this same agreement sealed in the Government Action.[2]

The Hospital Authority has considered whether there are any alternatives to filing under seal. In order to present a thorough response to the allegations set forth in Plaintiff's complaint and in light of the references in the Complaint to the documents sought to be filed under seal, the Hospital Authority believes that it is necessary to include these materials since the Complaint refers to or relies on the these documents, and the information they reflect, but does so in a manner the Hospital Authority believes is indisputably inaccurate.

---

[2] *See* Order Granting Motion to Seal Exhibit [to the Hospital Authority's Answer], *United States, et al. v. The Charlotte-Mecklenburg Hospital Authority*, Case No. 3:16-CV-00311-RJC-DCK (W.D.N.C. Aug. 26, 2016).

# ANALYSIS

## I. Standard of Review

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Virginia Dep't of State Police v. The Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004) (internal citations and quotation marks omitted). Substantively, the court must first determine the source of the right of access to each document and then, as to those documents subject to a right of access, the court must weigh the competing interests at stake. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988). Procedurally, the district court must (1) give the public notice and a reasonable opportunity to challenge the request to seal; (2) consider less drastic alternatives to sealing; and (3) if it decides to seal, make specific findings and state the reasons for its decision to seal over the alternatives. *Stone*, 855 F.2d at 181, *citing In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir. 1984).

## II. Plaintiffs Medical Billing Records (Exhibit 1) Contain Private Medical Information, which Should Be Sealed.

While they bear directly on his claims, Plaintiff's medical billing records contain personal medical information that is considered confidential and protected pursuant to HIPAA. *See* 45 C.F.R. § 160.103 (defining "protected health information" to include information that identifies an individual and "relates to the past, present, or future physical condition of an individual [or] the provision of health care" to that individual). The billing records contain Plaintiff's itemized bill of medical services and his insurance card. They thus reveal the medical treatment Plaintiff received from the Hospital Authority along with the conditions that led to such treatment, and accordingly are protected from disclosure under HIPAA.

5

Courts within this circuit have repeatedly held that preserving the confidentiality of protected medical information covered by HIPAA outweighs any public right of access under either the First Amendment or common law. *See Pinnix v. SSC Silver Stream Operating Co., LLC*, No. 7:14-CV-00161-FL, 2015 WL 4671979, at *10 (E.D.N.C. Aug. 6, 2015) (deeming it appropriate to seal records that contain "confidential medical information," even where they are of "vital" importance to the parties' claims); *Flood v. Univ. of Maryland Med. Sys. Corp.*, No. CIV.A. GLR-12-2100, 2014 WL 7363237, at *3 (D. Md. Dec. 23, 2014) (observing "[t]he need to protect confidential medical information proscribed by HIPAA serves an important governmental interest and there are no less restrictive means to serve that governmental interest," even where the First Amendment right of access applies). Plaintiff's medical billing records thus should be sealed.

### III. The BCBS-NC Agreement (Exhibit 5) Contains Highly Sensitive Commercial and Competitive Information that Should Be Sealed.

As this Court previously recognized when it ordered the BCBS-NC Agreement sealed in the Government Action, that agreement contains competitive and commercially sensitive information that North Carolina has deemed confidential as a matter of statute and which should be sealed.[3]

#### A. The contract is confidential on its face.

The BCBS-NC Agreement attached as Exhibit 5 to the Answer includes potential pricing and other competitive information, which, on its face, is proprietary and commercially sensitive. Moreover, the agreement recites that Hospital Authority and BCBS-NC treat this information as

---

[3] *See* Order Granting Motion to Seal Exhibit [to the Hospital Authority's Answer], *United States, et al. v. The Charlotte-Mecklenburg Hospital Authority*, Case No. 3:16-CV-00311-RJC-DCK (W.D.N.C. Aug. 26, 2016).

confidential, stating: "Both parties agree that this Agreement, including but not limited to Member lists, reimbursement rates and methodologies, are competitively sensitive," and that "reimbursement rates are proprietary and will be held in strictest confidence." Further the Agreement provides that:

> Both parties [BCBS and the Hospital Authority] agree that the Confidential Information includes proprietary and trade secret information, as defined under Article 24, Chapter 66 of the General Statutes of North Carolina. . . . Trade Secret information includes, information which either party identifies as a Trade Secret, Member lists, reimbursement rates, Fee Schedules, Reimbursement Exhibits, methodologies and any other information that a third party would reasonably consider to be a Trade Secret.

Answer, Exhibit 5, at § 6.9.1-6.9.2. However, it is not just the Agreement that contains commercially sensitive competitive information that is confidential. Rather, the parties agreed that even negotiations and proposed provisions are confidential:

> [A]ny rates or other contractual provisions offered by either party during negotiations of any proposed amendment to this Agreement or replacement of this Agreement shall be held confidential under the terms of this section in the same manner as is the Agreement between the parties.

Answer, Exhibit 5, at § 6.9.1. As a consequence, both BCBS-NC and the Hospital Authority have consistently taken all reasonable steps to treat the information contained in the excerpts of the Agreement that are in the BCBS-NC Agreement with the strictest confidence and have not disclosed them to the public or otherwise made them available to third parties. The disclosure of financial terms of this agreement would seriously damage the competitive positions of both the Hospital Authority and BCBS-NC by providing otherwise confidential and commercially sensitive competitive information to their competitors. Those competitors, armed with this information, could potentially adjust their pricing, alter their competitive positions, and otherwise take positions in the market that could result in less, not more, competition, and could

7

ultimately damage the Hospital Authority, BCBS-NC, the insureds of BCBS-NC and the consuming public.

### B. North Carolina Law Recognizes the Confidentiality of Competitive Health Care Information.

North Carolina law recognizes the confidential nature of the materials that have been submitted in the BCBS-NC Agreement. Indeed, North Carolina law specifically exempts the Hospital Authority, as a public body, from the production of the type of information contained in the BCBS-NC Agreement under the North Carolina Public Records Act.

North Carolina General Statute § 131E-97.3 (titled "Confidentiality of competitive health care information") provides:

> [Co]mpetitive health care information means information relating to competitive health care activities by or on behalf of hospitals and public hospital authorities. . . . Competitive health care information shall be confidential and not a public record under Chapter 132 of the General Statutes; ***provided that any contract entered into by or on behalf of a public hospital or public hospital authority, as defined in G.S. 159-39, shall be a public record unless otherwise exempted by law, or the contract contains competitive health care information***, the determination of which shall be as provided in subsection (b) of this section.

(emphasis added). North Carolina General Statute § 131E-99 (titled "Confidentiality of health care contracts") specifically provides that "the financial terms and other competitive health care information directly related to the financial terms in a ***health care services contract between a hospital*** or a medical school ***and a*** managed care organization, ***insurance company***, employer, or other payer is confidential and not a public record under Chapter 132 of the General Statutes." (emphasis added).

Thus, through both N.C. Gen. Stat. §§ 131E-97.3 and 131E-99, the State of North Carolina, as a matter of both law and public policy, has recognized and created provisions to ensure the ability to maintain the confidentiality of contractual agreements between hospitals and

8

insurance companies. *See also Wilmington Star-News, Inc. v. New Hanover Regional Medical Center, Inc.*, 125 N.C. App. 174, 181, 480 S.E.2d 53, 57 (1997) (holding that "the disclosure of the financial terms of a contract between an HMO and a hospital would be of substantial economic benefit to the competitors of that HMO").

Federal courts too have recognized that, where state law treats materials as confidential, this alone is a valid justification to seal the materials. Thus, in *Alexander v. City of Greensboro*, No. 1:09-CV-00293, 2013 WL 6687248 (M.D.N.C. Dec. 18, 2013), the district court found that the party seeking to seal documents in that case "met their burden" because the documents sought to be sealed "are confidential under North Carolina law." *Id.* at *4. While a different statute was at issue in that case, the court found the statute to be evidence of a compelling governmental interest to overcome any claimed right to access: "A compelling governmental interest exists to keep these documents confidential, as evidenced by North Carolina's strong policy promoting the privacy of documents such as these." *Id.*

        **C.    The Interest in Protecting the BCBS-NC Agreement from Disclosure Outweigh any Countervailing Interests in Its Disclosure.**

A district court is given wide discretion in deciding whether to seal documents under the common law and may seal documents "if the public's right of access is outweighed by competing interests." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Based on a totality of the circumstances, there are significant and substantial interests that support the sealing of the information contained in the BCBS-NC Agreement. Such information would be of substantial economic benefit to competitors of the parties to the contracts and release of this information could ultimately be detrimental to the public. It could hamper competition and impair any ability to control rising healthcare costs. The BCBS-NC Agreement has been treated

9

as highly confidential since it was negotiated and executed. Throughout the course of the prior actions, including Government Action, all parties have recognized the sensitive, confidential, and highly competitive nature of the health care information and contracts under review. Finally, while the excerpted contractual language in BCBS-NC Agreement informs the issues in this case, the sealing of this exhibit does not in any way restrict the ability of the judicial process to function openly and honestly. Therefore, sealing BCBS-NC Agreement is proper.

## IV. The Procedural Requirements to Seal Exhibits 1 and 5 are Satisfied.

The Hospital Authority has complied with Local Rule 6.1 and the procedural requirements necessary for the Court to order Plaintiff's billing records and the BCBS-NC Agreement sealed.

The exhibits at issue have been provisionally filed under seal pending the Hospital Authority's requests that they be permanently sealed pursuant to Local Civil Rule 6.1(b). Through this Memorandum, the Hospital Authority has explained the reasons why sealing is necessary, including addressing the requisite factors under governing law. *See* L.Civ.R. 6.1(c). The entry of the motion to seal and this memorandum on the public docket, which include descriptions of the materials to be sealed, provide the public notice of the intent to restrict public access to these documents. *See* L.Civ.R. 6.1(c).

Less drastic alternatives to sealing Plaintiff's billing records, such as redacting identifying information, would not provide adequate protection since a link would inevitably be drawn between an anonymous patient record and Mr. Benitez as the Plaintiff and patient at issue in this case. Likewise, less drastic alternatives to sealing the BCBS-NC Agreement will not afford adequate protection because release to the public of any information in the agreement would be a release of competitively and commercially sensitive information that would harm the

functioning and position of the market. Redaction of the BCBS-NC Agreement, for instance, would be futile since the document would effectively need to be redacted in nearly its entirety.

## CONCLUSION

For the foregoing reasons, The Hospital Authority respectfully requests that the Court grant their Motion to Seal Exhibits to Answer.

This 30th day of April 2018.

/s/ James P. Cooney
James P. Cooney III (N.C. Bar No. 12140)
Debbie W. Harden (N.C. Bar No. 10576)
Mark J. Horoschak (N.C. Bar No. 22816)
Brian Hayles (N.C. Bar No. 33971)
Sarah Motley Stone (N.C. Bar No. 34117)
Michael Fischer (N.C. Bar No. 47029)
WOMBLE BOND DICKINSON (US) LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, North Carolina 28202
Telephone: (704) 331-4900
E-mails: jim.cooney@wbd-us.com
debbie.harden@ wbd-us.com
mark.horoschak@ wbd-us.com
brian.hayles@ wbd-us.com
sarah.stone@ wbd-us.com
michael.fischer@ wbd-us.com

Hampton Y. Dellinger (N.C. Bar No. 19903)
Richard A. Feinstein*
Nicholas A. Widnell*

J. Wells Harrell*
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
E-mails: hdellinger@bsfllp.com
rfeinstein@bsfllp.com
nwidnell@bsfllp.com
wharrell@bsfllp.com

*Attorneys for Defendant The Charlotte-*

11

*Mecklenburg Hospital Authority d/b/a*
*Carolinas Healthcare System*
* Pro Hac Vice Applications Forthcoming

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of April, 2018, the foregoing was served via the Court's CM/ECF system to all parties registered to receive such notice including:

J. Gentry Caudill
Adam S. Hocutt
Dozier Miller Law Group
301 S. McDowell Street, Suite 700
Charlotte, NC 28204

R. Stephen Berry
Berry Law PLLC
1717 Pennsylvania Avenue, N.W.
Suite 850
Washington, DC 20006

Justin M. Ellis
Lauren M. Weinstein
Steven F. Molo
Mololamken LLP
430 Park Avenue
New York, NY 10022

Thomas J. Wiegand
Mololamken LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654

*Attorneys for Plaintiff and Proposed Class Co-Counsel*

                                                   /s/ James P. Cooney
                                                   James P. Cooney III (N.C. Bar No. 12140)