UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:18-cv-95

| | |
|---|---|
| **RAYMOND BENITEZ**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**THE CHARLOTTE MECKLENBURG HOSPITAL AUTHORITY, d/b/a CAROLINAS HEALTHCARE SYSTEM, ATRIUM HEALTH,**<br><br>Defendant. | **RESPONSE IN OPPOSITION TO MOTION FOR EARLY DISCOVERY** |

## I. Summary of Argument

The Plaintiff, after being successfully treated by the Charlotte-Mecklenburg Hospital Authority ("Hospital Authority"), waited two years after his alleged economic injury to file the Complaint in this case, which largely copies the complaint filed by the United States Department of Justice in 2016. He is now in a rush to begin discovery early, but does not identify any harm he would suffer if discovery remained within its normal process. In fact, Plaintiff provides no real reason for early discovery at all, except to say that the Hospital Authority's Motion for Judgment on the Pleadings is "doomed to fail"—a point Plaintiff uses to go into a detailed argument that amounts to nothing more than an improper sur-reply to that motion (but one that merely repeats previously-made arguments). In reality, the Hospital Authority's Motion for Judgment on the Pleadings is likely to be granted because federal law squarely applies to bar this case.

1

In any event, the Court need not consider the merits of that motion to decide this motion. It is enough that resolution of that motion may refine or obviate altogether the need for discovery, making early discovery a misguided waste of resources. The case law in this district says as much. Indeed, Plaintiff fails to cite a single case where a motion for early discovery was even before the court.

In short, this Motion should be denied for the following reasons: (1) Plaintiff has not established "good cause," or any real reason for permitting early discovery; (2) Plaintiff alleges no harm, much less irreparable harm, in waiting for discovery; (3) the cases cited by Plaintiff do not support early discovery; (4) relevant case law counsels against early discovery; and (5) if the Motion for Judgment on the Pleadings is granted, even in part, it will refine or obviate the need for discovery altogether.

**II.     Legal Standard**

Under Local Rule 16.1(f), "Court-enforceable discovery does not commence until issues have joined and a Scheduling Order has been entered." LCvR 16.1(f). Here, because the Hospital Authority filed a Rule 12(c) Motion for Judgment on the Pleadings, the issues have not yet joined: "Where Rule 12 Motions are filed and briefed, issues will not join until the Court resolves such motions." LCvR16.1(d).

While "[a] party seeking early Court-enforceable discovery may file a motion for leave to take early discovery," LCvR 16.1(f), courts in this district have required a showing of "good cause" before granting such a motion. *See*, *e.g. United Healthcare Services, Inc. v. Richards*, No. 3:09-CV-215, 2009 WL 4825184, at *2 (W.D.N.C. Dec. 2, 2009) (considering on a motion for early discovery and holding that "Plaintiff has not shown good cause for expedited discovery at this time"); *Milliken & Co. v. CAN Holdings, Inc.*, No. 3:08-CV-578, 2010 WL 148428

(W.D.N.C. Jan. 12, 2010) ("The Court finds that Plaintiff has not made the requisite showing of good cause necessary to commence early discovery in this matter.").[1] To establish "good cause," courts in this district have required the requesting party to demonstrate that "irreparable harm" would result if early discovery is not permitted. *United Healthcare*, 2009 WL 4825184 at *2 (noting that "UHC provides only generalized allegations regarding the 'irreparable harm' it might incur" and thus finding the requesting party "has not shown good cause for expedited discovery at this time").

Generally, early discovery is sought to support a pending motion for preliminary injunction or, at the very least, the intention to file one. Even then, the early discovery must be "'narrowly tailored' to obtain only information relevant to a possible request for preliminary injunction." *Richards*, No. 3:09-CV-215, 2009 WL 4825184 at *1. Broad early discovery is typically not permitted. Here, notwithstanding an alleged claim for relief that included injunctive relief, the Plaintiff does not seek a preliminary injunction, and thus the bar for early discovery is even higher because there is no immediate need for discovery.

Even where a preliminary injunction motion is pending, however, the bar is still high. In *Richards*, Judge Keesler considered a motion for early discovery by citing a case from the Eastern District of North Carolina where a motion for expedited discovery was filed to support a

---

[1] The publicly-available cases regarding motions for early discovery all pre-date the latest amendment to the local rules. The previous version of that rule, as quoted in the *Richards* case, was explicit that "good cause" was required: "If a party believes that early court sanctioned discovery is warranted, such party may file a motion for leave to take early discovery therein showing good cause." While the new version of the rule does not explicitly include that language, the Advisory Committee Notes to the new rule state that any changes to LCvR 16 were only "intended to bring the Local Civil Rules into conformity with the 2015 Amendments to the Federal Rules of Civil Procedure." Moreover, the commentary states that "our Local Rules . . . generally speak to Court-enforceable discovery not commencing until issues have joined and a scheduling order [is] issued[.]" Therefore, it appears "good cause" is still be the standard, despite no longer being explicit in the rule.

motion for preliminary injunction. There, the standard for early discovery was set forth as requiring four elements:

> Courts should require the plaintiff to demonstrate (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of irreparable injury; (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if expedited relief is granted.

*Dimension Data North America, Inc. v. Netstar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005) (quoting *Crown Crafts, Inc. v. Aldrich*, 148 F.R.D. 151, 152 (E.D.N.C. 1993)) (internal alterations omitted).

Here, Plaintiff has not established any of the factors required for permitting early discovery. Plaintiff makes no mention of "irreparable injury" (because there is none), much less a causal connection between early discovery and the avoidance of such an injury.

### III. Argument

#### A. This Case Is Proceeding Quickly and Plaintiff Will Suffer No Harm by Waiting until Joinder of the Issues for Discovery

Plaintiff allegedly suffered his economic "injury" in 2016, two years before bringing this action. He nonetheless now complains this case "has not progressed" and is eager to begin discovery.[2] (Doc. No. 48 at ¶ 2). In reality, this case is progressing quickly. The Hospital Authority has already filed an Answer—it could have simply filed a Motion to Dismiss—and has

---

[2] Plaintiff claims that "other than the filing of Atrium's Answer, and briefing on its motion for judgment on the pleadings" (which was substantial), "this case has not progressed since it was filed nearly four months ago." Focusing on the filing date is somewhat misleading. This lawsuit was served on February 28, 2018, (Doc. No. 4), and the Hospital Authority waived service, giving it 60 days to respond. *See* Fed. R. Civ. P. 4(d)(3). The Hospital Authority did not simply file a Motion to Dismiss—which would delay the filing of an Answer—but instead timely filed both an Answer and a Motion for Judgment on the Pleadings. The Motion for Judgment on the Pleadings did not become ripe until June 4, 2018—just 15 days prior to Plaintiff filing this Motion for Early Discovery.

engaged in a conversation regarding protecting confidential information (of which there is much in this case) so that if discovery begins, it may do so without delay.³

Moreover, Plaintiff claims that discovery has "barreled ahead in two similar antitrust proceedings." (Doc. No. 48 at ¶ 5). This is both irrelevant and wrong. In neither of those "similar antitrust proceedings," did discovery begin before resolution of Rule 12 motions (all of which are different than the motion filed in this case). Only one of those cases is in federal court; it was filed on June 9, 2016, but a scheduling order was not entered—and court-enforceable discovery did not begin—until May 18, 2017—almost a year later. *United States v. Charlotte-Mecklenburg Hospital Authority*, No. 3:16-CV-311 (W.D.N.C.) (Doc. Nos. 1, 51). The other was filed in state court, where discovery is different, but still a scheduling order was not entered until about four months after the complaint was filed. *DiCesare v. Charlotte-Mecklenburg Hospital Authority*, No. 2016-CVS-16404 (N.C. Super.) (Doc. Nos. 1, 35). Plaintiff only seeks to play catch up with those cases filed in 2016. Here, the Motion for Judgment on the Pleadings was ripe only 15 days before Plaintiff filed its Motion seeking early discovery.

Plaintiff will suffer no harm from waiting until the issues are joined. Indeed, Plaintiff points to no harm, and concedes that this case is "substantially similar" to the Department of Justice's case, which is moving forward and is set for trial in May. Even if Plaintiff is successful in defeating the Motion for Judgment on the Pleadings, it is difficult to see what harm would result in waiting to receive discovery.

---

³ The Hospital Authority notes that it could not produce all of the discovery now in any event because of the large amounts of highly confidential and restricted third-party information, including machine data. Plaintiff recognizes this and notes in his Motion that he "intends to file a limited motion to intervene [in the Department of Justice's case] for the purpose of amending the protective order." (Doc. No. 48 at ¶ 8). Nonetheless, the Hospital Authority is currently working to ensure discovery moves efficiently if and when a scheduling order is entered.

5

Case 3:18-cv-00095-RJC-DCK   Document 50   Filed 07/03/18   Page 5 of 14

B. The Case Law Cited by Plaintiff Does Not Support Early Discovery

The broader case law likewise does not support early discovery. Plaintiff cites four cases in support of its Motion, but this case is moving faster than each of them. Moreover, not a single one of those four cases involved a motion for early discovery.

Three of the four cases cited by Plaintiff involve a motion to extend the deadline to complete discovery, not a motion to begin discovery early:

- In *Freehill v. Lewis*, 355 F.2d 46 (4th Cir. 1966), the Answer was filed seven months after the lawsuit was filed, and—far from early discovery—discovery did not begin until a year after the case was filed. *Id.* at 49 ("On September 3, 1964, a complaint was filed . . . [p]retrial discovery . . . was neither commenced nor noticed prior to September 16, 1965.").

- In *Dow Elec., LLC v. Mass Elec. Constr. Co.*, No. 3:09-CV-361, 2010 WL 1509456, at \*2 (W.D.N.C. Apr. 14, 2010), the motion to extend the discovery deadline was filed 9 months after the Complaint was filed, and was denied.

- In *Warner Bros. Records v. Souther*, No. 1:05-CV-279, 2006 WL 1549689 (W.D.N.C. June 1, 2006), the discovery completion deadline was extended because of noncompliant discovery responses and because the court granted a motion to compel that would necessarily extend the trial date.

The last case cited by Plaintiff, *Bojangles Int'l, LLC v. CKE Restaurants Holdings, Inc.*, No. 3:17-CV-00398, 2017 WL 30652115 (W.D.N.C. July 19, 2017), was likewise not about early discovery, but about expediting discovery after a preliminary injunction in a trademark case was denied. The reasoning was that expedited discovery may minimize the harm of the trademark violation. While the court permitted "limited expedited discovery," it did not permit early discovery; indeed, the TRO and preliminary injunction were decided without the benefit of discovery at all. Additionally, Plaintiff asserts that *Bojangles* stands for the proposition that "courts in this district have found that moving 'expeditiously . . . through the discovery process' is in the best interest of the public and the parties." (Doc. No. 48 at ¶ 9). In reality, this quote, which is only partial, has nothing to do with early discovery, and the court specifically limited it

to the facts of that case: "Given the timeline of the product's removal from the marketplace, a speedy discovery process would be helpful for the prompt resolution of this dispute. The public and the parties themselves would be served if these two quick-service restaurants were able to expeditiously move through the discovery process and especially if they could resolve this matter without trial." *Id.* at *6. None of the decisions cited by Plaintiff are analogous to the situation here or instructive to the issues before the Court.

    C. <u>Relevant Cases from This District Counsel against Early Discovery</u>

What is more, Plaintiff did not rely on those cases because they are the only ones available—there are readily-available cases dealing with this very issue that have been decided by courts in this district. The difficulty for Plaintiff is that they do not support this request for early discovery. The Plaintiff thus simply ignores every available case regarding early discovery, such as:

- In *Reape v. Mabus*, No. 3:16-CV-007, 2016 WL 9226494 (W.D.NC. August 8, 2016), Judge Keesler did not permit early discovery in an administrative review case before cross-motions for summary judgment were decided: "Defendant will not be required to participate in discovery prior to entry of a 'Pretrial Order And Case Management Plan,' which will most likely be issued, if at all, following disposition of the parties' cross motions for summary judgment." *Id.* at *1.

- In *Stroupe v. Branch Banking and Trust Co.*, No. 1:08-CV-196, 2008 WL 3823724 (W.D.N.C. Aug. 13, 2008), Judge Howell instructed: "[C]ounsel for plaintiff are advised that there is no court-enforceable discovery that is available before joinder of the issues, and that plaintiff should refrain from tendering non-consensual discovery requests prior to entry of a Pretrial Order."

- In *United Healthcare Services, Inc. v. Richards*, No. 3:09-CV-215, 2009 WL 4825184 (W.D.N.C. Dec. 2, 2009), Judge Keesler held: "This matter is before the court on the 'Motion for Leave to Take Early Discovery,' . . . [c]onsidering all the circumstances here, Plaintiff has not shown good cause for expedited discovery at this time."

Perhaps the most relevant case from this district is *Milliken & Co. v. CNA Holdings, Inc.*, No. 3:08-CV-578, 2010 WL 148428 (Jan. 12, 2010 W.D.N.C. 2010). There, the plaintiff filed a

"Motion to Take Limited Early Discovery," seeking production of "all discovery that Defendant produced in an allegedly related case." *Id.* at *1. The *Milliken* court denied the motion for early discovery, finding that the plaintiff had "not made the requisite showing of good cause to commence early discovery in this matter." *Milliken*, 2010 WL 148428 at *1. In so ruling, the *Milliken* court addressed the primary argument of Plaintiff here—Plaintiff asserts that the Hospital Authority's Motion for Judgment on the Pleadings is "doomed to fail" and thus discovery should begin immediately. (Doc. No. 48 at ¶ 15). The *Milliken* court made clear that it had "formed no opinion as to the merits" on a pending Motion to Dismiss, but noted that if the motion were "granted in whole or in part"—in other words, whether the complaint was "dismissed entirely or [p]laintiff's claims reduced in scope"—then "[p]laintiff's need and right to conduct any discovery would be eliminated or curtailed." *Milliken*, 2010 WL 148428 at *1.

The same is true here. The Motion for Judgment on the Pleadings, if successful, would limit the scope of discovery or obviate Plaintiff's right to it altogether. That possibility is enough; the Court need not even consider the merits, as the *Milliken* court did not. Plaintiff requests that the Court reach the merits now only to use its Motion for Early Discovery as an improper sur-reply regarding the Motion for Judgment on the Pleadings and to re-litigate those issues. *See* LCvR 7.1(e) (noting that sur-replies are "neither anticipated nor allowed" and require leave of Court to be submitted); *Shareef v. Donahoe*, No. 3:11-CV-00615, 2012 WL 934125 (W.D.N.C. March 20, 2012) ("The Court notes that sur-replies are not permitted under the Rules of this Court . . . ."); *Sea Island Co. v. The IRI Group, LLC*, No. 3:07-CV-013, 2007 WL 2997660 (W.D.N.C. Oct. 12, 2007) ("[S]ur-reply briefs are not permitted in this Court . . . .").

D.  The Motion for Judgment on the Pleadings Is Likely to Be Granted

Should the Court consider the merits, the reality is the Hospital Authority's Motion for Judgment on the Pleadings is highly likely to be granted because it rests on solid law.  The Local Government Antitrust Act ("LGAA") plainly protects local government entities, such as the Hospital Authority, from actions for damages under the antitrust laws.  Plaintiff does not appear to dispute that the Hospital Authority is a unit of local government, but instead now states that the Hospital Authority is "not the sort of local government entity the LGAA was designed to protect."  (Doc. No. 48 at ¶ 12).  The LGAA's plain language, however, says otherwise and, as briefed extensively in connection with the Motion for Judgment on the Pleadings, the LGAA unmistakably applies to entities such as the Hospital Authority—and has indeed been applied in the past to such entities.  *See*, *e.g.*, *Cohn v. Wilkes General Hosp.*, 767 F. Supp. 111, 113 (W.D.N.C. 1991) ("The Fourth Circuit has recently given clear expression to the absolute immunity provided by the LGAA in a case remarkably similar to the present situation . . . the Fourth Circuit held that immunity granted by the LGAA extended to a North Carolina county hospital's director, and members of the board of trustees, medical staff, and ad hoc committees.")

Even if the LGAA did not apply (which it does), Plaintiff here still does not have standing to bring this suit.  *Illinois Brick* and its progeny are clear that the federal antitrust laws are intended and interpreted such that only a single link in the supply chain—the link immediately following the alleged antitrust violator—has standing to sue.  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977) (holding that only a direct purchaser has standing to sue under the antitrust laws and that a direct purchaser may only absorb "some" of the overcharge).  Here, that single eligible link is the insurers who negotiate the rates charged by the Hospital Authority for care of their insureds (which are different rates than those paid by the uninsured or those

9

insured by a different insurance company). The same insurers likewise decide the amount of any co-insurance or similar payment. Under *Illinois Brick*, only those insurers have standing to sue; no one further down the supply chain has standing (except, of course, the United States). *See*, *e.g.*, *Kloth v. Microsoft Corp.*, 444 F.3d 312, 322 (4th Cir. 2006) (holding that plaintiffs did not have standing for an antitrust action because "plaintiffs [stood] at the end of a distribution chain in which the intermediaries have independently set prices").

Beyond simply not being a direct purchaser, Mr. Benitez additionally lacks standing because his injuries are even farther down the causal chain than a typical insured patient. *See Illinois Brick*, 431 U.S. at 728 n. 7 (noting that "the question of which persons have sustained injuries too remote to give them standing to sue for damages" is "analytically distinct" from the question of who allegedly suffered an injury). Plaintiff, who despite purporting to represent a class of individuals "similarly situated" in this action, admits he is "uniquely situated." (Doc. No. 48 at ¶ 14). And indeed he *is* "uniquely situated." Mr. Benitez is a dependent of an insured who, in turn, has an employment relationship with Tyson Foods in Arkansas. Tyson Foods provides that insured—not a party here—health insurance through a separate contractual relationship with Blue Cross Blue Shield of Arkansas ("BCBS Arkansas"). BCBS Arkansas, then, has a contract with Blue Cross Blue Shield of North Carolina ("BCBS NC"), and other Blue Cross entities, to permit its members to access BCBS NC rates. BCBS NC, in the next link of the chain, negotiates a contract with the Hospital Authority, which includes the rates the Hospital Authority charges for care of its insureds. This complicated and lengthy sequence makes clear that this Plaintiff lacks the "directness of the alleged injury" the United States Court of Appeals for the Fourth Circuit and the United States Supreme Court have held is required to establish antitrust standing. *See Kloth v. Microsoft Corp.*, 444 F.3d 312, 324 (4th Cir. 2006)

10
Case 3:18-cv-00095-RJC-DCK   Document 50   Filed 07/03/18   Page 10 of 14

(citing *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 559 U.S. 519, 543 (1983)). Instead, there are other, more direct individuals that would be more "efficient enforcers," even if there were an antitrust violation here. *Id.* That factor alone is enough to warrant dismissal.

The Hospital Authority thus has three strong, independent bases for judgment on the pleadings, and is likely to be successful in each.[4] If the Hospital Authority is successful, even partly, "Plaintiff's need and right to conduct any discovery would be eliminated or curtailed," a point that a court in this district found to be a "particularly important factor" in a very similar case. *Milliken*, 2010 WL 148428 at *1 (forming "no opinion as to the merits of Defendant's Motion to Dismiss," but noting nonetheless that if it is successful "Plaintiff's need and right to conduct any discovery would be eliminated or curtailed").[5]

---

[4] What is more, if the Court grants the Hospital Authority's Motion for Judgment on the Pleadings, not only will discovery become unnecessary, it will expedite the ultimate conclusion of this case, even when the appellate process is taken into account. If the Hospital Authority's motion is granted, the legal issues can be appealed by Plaintiff immediately. The legal issues presented in this case, which are unique to it, can be resolved at the appellate level while the underlying facts can be competently prosecuted by the United States in the proceeding Plaintiff concedes "substantially overlaps" with this one (and, indeed, shares practically a verbatim complaint). (Doc. No. 48 at ¶¶ 5).

[5] Even if the Hospital Authority's motion is denied, a stay in these proceedings pending the outcome of the case brought by the Department of Justice (from which the allegations in the Complaint here are copied) would be appropriate. It is common for government enforcement actions to be permitted to proceed while private cases based on the same facts are stayed. *See generally Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 849 F. Supp. 2d 881, 888 (D. Minn. 2012) ("District courts are accorded 'an ample degree of discretion' in the decision to stay or dismiss a proceeding based on duplicative federal litigation."); *McDonald on behalf of RPM Int'l, Inc. v. Abizaid*, No. 1:17-CV-907, 2018 WL 692006 (N.D. Ohio Feb. 2, 2018) (staying a derivative suit to allow an SEC enforcement action to proceed "[a]s a matter of judicial economy and fairness," finding that "Plaintiff will not be prejudiced and the likelihood of duplicative litigation is high if both cases run concurrently"); *Benisek v. Lamone*, 266 F. Supp. 3d 799, 803 (D. Md. 2017), *aff'd*, No. 17-333, 2018 WL 3013808 (U.S. June 18, 2018) ("In deciding whether to stay proceedings, a court should consider the likely impact of a stay on each party as well as the 'judicial resources that would be saved by avoiding duplicative litigation if the case is in fact stayed.'").

The *Milliken* court summarized the issue exactly as it is here: "Simply put, [p]laintiff's desire to get a 'head start on discovery,' while understandable, is insufficient to justify early discovery of the breadth and depth Plaintiff proposes." *Milliken*, 2010 WL 148428 at *1.

**IV.     Conclusion**

Plaintiff resorted to case law regarding extensions of the discovery period, rather than motions for early discovery, because the law in this district does not favor early discovery. The local rules require at least a reason for early discovery, and Plaintiff has provided no rationale as to why this case is different than any other. Plaintiff has not been in a rush until now, and will suffer no harm if discovery begins after joinder of the issues. What he really seeks is a sur-reply on the Motion for Judgment on the Pleadings, which he has now effectively received. But Plaintiff's arguments change neither that motion nor this one—there is no just reason for beginning discovery early in this matter. The Motion for Early Discovery should be denied.

Respectfully submitted this the 3rd day of July, 2018,

/s/ James P. Cooney
James P. Cooney III (N.C. Bar No. 12140)
Debbie W. Harden (N.C. Bar No. 10576)
Mark J. Horoschak (N.C. Bar No. 22816)
Brian Hayles (N.C. Bar No. 33971)
Sarah Motley Stone (N.C. Bar No. 34117)
Michael Fischer (N.C. Bar No. 47029)
Russ Ferguson (N.C. Bar No. 39671)
Matthew F. Tilley (N.C. Bar No. 40125)
WOMBLE BOND DICKINSON (US) LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, North Carolina 28202
Telephone: (704) 331-4900
E-mails: jim.cooney@wbd-us.com
debbie.harden@wbd-us.com
mark.horoschak@wbd-us.com
brian.hayles@wbd-us.com
sarah.stone@wbd-us.com
michael.fischer@wbd-us.com
matthew.tilley@wbd-us.com

Hampton Y. Dellinger (N.C. Bar No. 19903)
Richard A. Feinstein*
Nicholas A. Widnell*
J. Wells Harrell*
Sean N. Johnson*
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
E-mails: hdellinger@bsfllp.com
rfeinstein@bsfllp.com
nwidnell@bsfllp.com
wharrell@bsfllp.com
sjohnson@bsfllp.com

*Attorneys for Defendant The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health*

* Admitted *pro hac vice*.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of July, 2018, the foregoing was served via the Court's CM/ECF system to all parties registered to receive such notice including:

Adam S. Hocutt
Dozier Miller Law Group
301 S. McDowell Street, Suite 700
Charlotte, NC 28204

R. Stephen Berry
Berry Law PLLC
1717 Pennsylvania Avenue, N.W.
Suite 850
Washington, DC 20006

Justin M. Ellis
Lauren M. Weinstein
Steven F. Molo
Mololamken LLP
430 Park Avenue
New York, NY 10022

Thomas J. Wiegand
Mololamken LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654

Benjamin Thomas Sirolly
Mololamken LLP
600 New Hampshire Avenue, NW, Suite 660
Washington, DC 20037

/s/ James P. Cooney
James P. Cooney III (N.C. Bar No. 12140)